## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

### CIVIL ACTION NO. 4:04CV-00176

**PADUCAH & LOUISVILLE RAILWAY, INC.**                                                                     **PLAINTIFF**

V.

**QUIXX CORPORATION, UTILITY ENGINEERING, and EXCEL ENERGY, INC.**                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by Defendant Quixx Corporation to exclude the proposed testimony of Plaintiff's expert, James Bennett, and for summary judgment [DN 54]; and a motion by the Plaintiff to file a Third Amended Complaint [DN 61]. Fully briefed and argued,[1] this matter is ripe for decision. For the following reasons, the Plaintiff's motion to file a Third Amended Complaint is **GRANTED**; the Defendant's motion for summary judgment is **GRANTED**; and the Defendant's motion to exclude expert testimony is **DISMISSED** as moot.[2]

### I. FACTS

On January 28, 2004, eleven loaded coal cars derailed on a line of track owned by the Plaintiff, Paducah & Louisville Railway ("P & L"). It is undisputed that the derailment was caused by the broken bolster at issue in this case. This bolster contains a reconditioning stamp which identifies the month and the year that the bolster was reconditioned and the facility at which the

---

[1] The Court heard oral argument on these motions on August 31, 2007.

[2] The Court need not decide the Defendant's motion to exclude expert testimony [DN 54] because the Court has assumed for purposes of summary judgment that the expert's testimony is admissible.

reconditioning was performed. The reconditioning stamp indicates that the bolster was reconditioned in March 1997 at Amarillo Railcar Services ("ARS"), a railcar repair facility in Amarillo, Texas, which was then owned by the Defendant, Quixx Corporation ("Quixx"). The Plaintiff alleges that when Quixx (d/b/a ARS) reconditioned the subject bolster, it was "negligent in the rebuilding and welding performed upon [the railcar], and such negligence caused the bolster to break, resulting in the derailment." [DN 22, Plaintiff's Second Amended Complaint, ¶ 16]. The Plaintiff further alleges that Quixx's "actions in rebuilding and welding were such that the resulting damage should not have happened and the doctrine of res ipsa loquitor applies." [Id., ¶ 17].

## II. LEGAL STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing

there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477. U.S. at 252. It is against this standard that the court reviews the following facts.

### III. DISCUSSION

#### A. Third Amended Complaint

The Plaintiff has asked the Court for leave to file a Third Amended Complaint so that it can clarify its specific theories of negligence. Quixx argues that leave should not be granted because the deadline for amending pleadings has passed and because a summary judgment motion is already before the Court. However, under Fed. R. Civ. P. 15(a), a party that misses the deadline to amend its pleading may still be permitted to amend "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Thus, the Supreme Court has recognized that, in the absence of undue delay, bad faith, a repeated failure to cure deficiencies by amendment, or undue prejudice to the opposing party, the leave sought should be granted. Foman v. Davis, 371 U.S. 178, 182 (1962). Here, the Court finds none of these reasons to deny leave – the Plaintiff is merely seeking to more clearly allege how Quixx's acts or omissions during the reconditioning of the bolster constituted negligence. Accordingly, the Court **GRANTS** the Plaintiff leave to file a Third Amended Complaint and considers the merits of the claims in the Third Amended Complaint below.

#### B. Summary Judgment

The Plaintiff alleges various theories of negligence. First, the Plaintiff claims that Quixx was negligent when it made improper welds on the subject bolster during reconditioning. The Plaintiff

next alleges that Quixx was negligent when it placed a bolster that should have been scrapped under industry standards back into service. Finally, the Plaintiff claims that Quixx's negligence is established by the doctrine of *res ipsa loquitor*. The Court will consider each of these in turn.

To establish a claim of negligence under Kentucky law, a plaintiff must establish that 1) the defendant owed a duty of care to the plaintiff; 2) the defendant breached that duty; and 3) the breach proximately caused the plaintiff's damages. Mullins v. Commonwealth Life Ins. Co., 839 S.W.2d 245, 247 (Ky. 1992).[3] Causation, or proximate cause, is defined by the substantial factor test: "was the defendant's conduct a substantial factor in bringing about the plaintiff' harm?" Morales v. American Honda Motor Co., 151 F.3d 500, 507 (6th Cir. 1998)(citing Deutsch v. Shein, 597 S.W. 2d. 141, 144 (Ky. 1980)). Causation may be proved by circumstantial evidence, but it must be established by a preponderance of the evidence-- "the evidence must be sufficient to tilt the balance from possibility to probability." Id. (quoting Calhoun v. Honda Motor Co., Ltd., 738 F.2d. 126, 130 (6th Cir. 1984); see also Brown v. Wal-Mart Stores, Inc., 1999 U.S. App. LEXIS, *12-14 (6th Cir. 1999).

In support of its negligence claims, he Plaintiff seeks to introduce the expert opinions of Mr. James Bennett, a metallurgical engineer. Following a physical examination and testing of the subject bolster, Mr. Bennett concluded that Quixx failed to meet the reconditioning requirements promulgated by the Association of American Railroads (AAR). According to Mr. Bennett, Quixx

---

[3] Neither party contests that Kentucky law applies to the Plaintiff's negligence claims. A forum state's choice of law provisions apply when a federal district court has diversity jurisdiction under 28 U.S.C. § 1332. Anderson , Inc. v. Consol, Inc., 348 F.3d 496, 501 (6th Cir. 2003). In tort actions, Kentucky applies its own substantive law if there is any significant contact with Kentucky. Vaughn v. United States, 1997 U.S. App. LEXIS 35795 (6th Cir. 1997)(citing Bonnlander v. Leader Nat'l Ins. Co., 949 S.W. 2d 618, 620 (Ky. Ct. App. 1996)). Thus, even if the negligent act or omission occurred in another state, if the injury caused by that negligent act or omission occurred in Kentucky, Kentucky applies Kentucky law. Id.

violated AAR standards by making weld repairs "greater than the one-inch allowed in a non-transverse direction." (DN 54, Ex. A, p. 3) He ultimately concluded that:

> While the root cause of the bolster failure may be metal fatigue and initiation points for the fatigue cracking may not be at these welds, this bolster should have been scrapped, not reconditioned. If it had not been weld repaired transverse of the load-bearing member and returned to service, it would have been scrapped prior to the bolster material reaching the end of its fatigue life and the development of fatigue cracks thus avoiding the problems associated with the failure of this bolster.

(Id.).

Based on these conclusions, Quixx argues that the Plaintiff's negligence claims fail as a matter of law because Mr. Bennett's opinion does not establish that Quixx caused the bolster to break. The Court agrees with Quixx. Viewing the evidence for this theory in the light most favorable to the Plaintiff, the Court concludes the Plaintiff cannot establish that Quixx caused the bolster to break. The evidence suggests - and neither party disputes - that the bolster failed due to metal fatigue. Thus, under the Plaintiff's first theory of negligence, even if it is assumed that Quixx breached a duty to the Plaintiff by welding the ends of the bolster in way that failed to meet AAR specifications, the evidence does not establish that this breach caused the bolster to fracture. Rather, the Plaintiff's own expert concluded that metal fatigue, and not these suspect welds, caused the fracture.

Under the Plaintiff's second theory of negligence, Quixx breached a duty owed to the Plaintiff by placing a bolster that should have been scrapped under AAR standards back into service. However, there is also no evidence suggesting that this alleged breach caused the Plaintiff's harm. While the bolster undoubtedly would not have cracked and caused the accident if it had not been placed back into service, the evidence does not establish that the placement of the bolster back into service caused the bolster to crack. Indeed, even though Quixx's placement of the

bolster back into service may have provided the occasion for the Plaintiff's injury, the evidence shows that it was metal fatigue, and not Quixx's placement of the bolster back into service, that proximately caused the bolster to break. See, e.g., Estate of Wheeler v. Veal Realtors & Auctioneers, Inc., 997 S.W.2d 497 (Ky. App. 1999)("When the original negligence is remote and only furnishes the occasion for the injury, it is not the proximate cause thereof.")(quoting Peak v. Barlow Homes, Inc., 765 S.W.2d 577 (Ky. App. 1989)).

Finally, the Plaintiff argues that Quixx's "actions in rebuilding and welding were such that the resulting damage should not have happened and the doctrine of *res ipsa loquitor* applies." (DN 22, Second Amended Complaint, ¶ 17). The doctrine of *res ispa loquitor* recognizes that sometimes the very nature of an occurrence justifies an inference of negligence on the part of the person who controls the instrumentality causing the injury. Barnes v. Otis Elevator Co., 2 Fed. Appx. 461, 467 (6th Cir. 2001) (citing Bell & Koch, Inc. v. Stanley, 375 S.W. 2d 696, 697 (Ky. 1964). To invoke the doctrine of *res ipsa loquitor* in Kentucky, a plaintiff must establish that 1) the instrumentality that caused the injury was under the control or management of the defendant; 2) the circumstances, according to common knowledge and experience, create a clear inference that the accident would not have happened had the defendant not been negligent; and 3) the plaintiff's injury must have resulted from the accident. Id. (citing Helton v. Forest Park Baptist Church, 589 S.W.2d 217, 219 (Ky. Ct. App. 1979)). The doctrine of *res ipsa loquitor* is inapplicable where "the instrumentality producing the injury or damage is unknown or not in the exclusive control of the defendant." Helton, 589 S.W.2d at 219.

Here, Quixx argues that the Plaintiff's *res ipsa loquitor* claim fails as a matter of law because the Plaintiff cannot demonstrate that Quixx had "exclusive control" of the subject bolster before the

accident occurred. According to Quixx, after it performed the reconditioning work in 1997, the railcar which contained the subject bolster was under the control of the owner of the railcar, the lessee of the railcar, and the Plaintiff - the owner of the line of track on which the railcar traveled, before the fractured bolster caused the derailment on January 28, 2004. Based on these facts, the Court agrees that the Plaintiff cannot establish an essential element of *res ipsa loquitor* - that Quixx had exclusive control of the instrumentality which caused the injury - and that, therefore, the Plaintiff's *res ipsa loquitor* claim fails as a matter of law.

Thus, the Court **GRANTS** summary judgment for Quixx.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's motion for leave to file a Third Amended Complaint is **GRANTED;** the Defendant's motion for summary judgment is **GRANTED**; and the Defendant's motion to exclude expert testimony is **DISMISSED as moot.**

cc: Counsel of Record